UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REPUBLIC TECHNOLOGIES (NA), LLC, and SREAM, INC., <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>FRIENDS TRADING INC. d/b/a STOP 30 and MUHAMMAD SHAMSI, <br><br>　　　　　Defendants. | No. 19 C 7991 <br><br> Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Republic Technologies (NA), LLC ("Republic") owns certain trademarks, and Plaintiff Sream, Inc. ("Sream") licenses these trademarks. They allege that Defendants Friends Trading Inc. d/b/a STOP 30 ("STOP 30") and Muhammad Shamsi have engaged in trademark infringement, counterfeiting, and false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, by offering for sale water pipes and related products bearing a brand similar to Republic's trademarks. Defendants have moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have adequately alleged likelihood of confusion and need not allege that Defendants sold products knowing they were counterfeits, the Court denies Defendants' motion to dismiss [22].

**BACKGROUND**[1]

Since 1995, Martin Birzle has marketed and sold products for smokers using the trademark "RooR." Birzle worked for nearly two decades "to distinguish the RooR brand as the

---

[1] The Court takes the facts in the background section from Plaintiffs' complaint and the exhibits attached thereto and treats all well-pleaded, non-conclusory factual allegations as true for the purpose of resolving Defendants' motion to dismiss. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

premier manufacturer of glass water pipes by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles [that] facilitate a superior smoking experience." Doc. 1 ¶ 10. The RooR-branded products, which include glass water pipes, parts, and related accessories, "are widely recognized internationally and are highly renowned for their ornate and innovative characteristics." *Id.* ¶ 9. RooR-branded products have garnered numerous awards for their quality and innovation, and they have a significant following inside and outside the United States.

In March 1999, Birzle obtained a federally registered trademark for the word mark "ROOR" in stylized font with the last "R" facing backwards. Birzle obtained two more federally registered trademarks for similar word marks in January 2000 and September 2009, and at some point, Birzle also obtained common law and unregistered state law rights in variants of the registered RooR trademarks. To better visualize the registered and unregistered RooR trademarks (collectively, the "RooR Marks"), below is one of the federally registered marks:



Doc. 1-2 at 1 (Trademark Reg. No. 3,675,839). The other RooR Marks are substantially similar.

In August 2013, Birzle gave an exclusive license to manufacture and sell products bearing the RooR Marks in the United States to Sream, a company that manufactures glass products and various smokers' articles, including water pipes. Six years later, in August 2019, a company named RooR International BV assigned the RooR Marks to Republic.[2] The same day, Republic gave Sream an exclusive license to use the RooR Marks in the United States. In short,

---

[2] Birzle signed the assignment agreement as a director of RooR International. Presumably, Birzle conveyed his rights in the RooR Marks to RooR International before RooR International conveyed those rights to Republic, but Plaintiffs' complaint is silent on this issue.

Republic is the current owner of the RooR Marks, and Sream is (and has been since 2013) the exclusive licensee authorized to use the RooR Marks in the United States.

Since 2013, Sream has continuously used the RooR Marks in commerce within the United States in connection with the manufacture and sale of smokers' products. Sream sells water pipes and other smokers' articles associated with the RooR Marks to authorized distributors, including retail stores specializing in smoker's products, in Illinois and nationwide. Stream also advertises and markets RooR-branded products, and Plaintiffs together "have spent substantial time, money, and effort in developing consumer recognition and awareness of the RooR brand via point of purchase materials and displays, through their websites, by attending industry trade shows, and through social media promotion." Doc. 1 ¶¶ 16, 19.

The quality of the RooR-branded products makes the RooR Marks distinctive to both the consuming public and professionals in Plaintiffs' industry. Individual artists hand-blow Sream's RooR-branded products using nearly unbreakable glass. Moreover, the unique style and functional superiority of RooR-branded products have earned various accolades and have made the RooR Marks synonymous with high-quality products. And because of the quality and innovation associated with the RooR Marks, consumers are willing to pay much higher prices for genuinely RooR-branded products as opposed to non-RooR-branded products. Sales of products bearing the RooR Marks in the United States have been more than $4 million for the last three years.

However, counterfeiters have targeted RooR-branded products by selling, without Plaintiffs' authorization, inferior water pipes and other products that have identical or nearly identical versions of the RooR Marks affixed to them. Counterfeit products have flooded the

United States marketplace, resulting in lost sales and damages to Plaintiffs and irreparable harm to the RooR brand.

Shamsi owns, manages, and/or operates STOP 30, a retail store located in Crest Hill, Illinois. STOP 30, with Shamsi's participation or under his authority or direction, has offered to sell water pipes and products bearing a mark that is similar to the RooR Marks (the "Infringing Mark") without Plaintiffs' authorization. These water pipes are materially and technologically inferior to genuine RooR-branded products. Specifically, in December 2016, Defendants sold the water pipe shown below that bears the Infringing Mark:



Doc. 1-5 at 5.

Defendants' offers to sell goods bearing the Infringing Mark (the "Infringing Goods") have caused Plaintiffs to lose business opportunities, customers, contracts, and sales; considerably damaged the goodwill of Plaintiffs and the RooR Marks; and diminished the brand

4

recognition of the RooR Marks. Plaintiffs seek, among other things, statutory damages, treble damages, and injunctive relief.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago,* 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice of the claim's basis to the defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) ("[T]he allegations in the complaint 'must plausibly suggest . . . a right to relief, raising that possibility above a speculative level.'" (citation omitted)).

## ANALYSIS

Plaintiffs bring claims against Defendants for federal trademark infringement and counterfeiting under 15 U.S.C. §§ 1114 and 1116(d) (Counts I and II)[3] and federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a) (Count III). Under the

---

[3] Count I invokes § 1114, whereas Count II invokes § 1116(d). Section 1116(d), however, does not provide a cause of action separate from the cause of action defined in § 1114; rather, § 1116(d) authorizes a particular type of remedy (injunctive relief involving the seizure of items) where a violation of § 1114 involves the use of a counterfeit mark. 15 U.S.C. § 1116(d)(1)(A); *TWD, LLC v. Grunt Style LLC*, No. 18 C 7695, 2019 WL 5420153, at *3 (N.D. Ill. Oct. 23, 2019) ("Section 1116 is merely a remedy for a violation of Section 1114, not an independent cause of action."). Therefore, the Court considers Counts I and II as together raising a claim for trademark infringement and counterfeiting.

Lanham Act, a defendant is liable for trademark infringement if the defendant, without the trademark registrant's consent:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a); *Desmond v. Chi. Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 879–80 (N.D. Ill. 2013). Counterfeiting is a particular type of trademark infringement under § 1114(1)(a) where the defendant uses "a spurious mark [that] is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127 (defining "counterfeit"); *N. Am. Van Lines, Inc. v. N. Am. Moving & Storage, Inc.*, No. 1:18-CV-196-HAB, 2020 WL 703178, at *3–4 (N.D. Ind. Feb. 10, 2020) ("Trademark infringement, including counterfeiting, is prohibited under 15 U.S.C. § 1114[(1)](a) . . . . However, not all trademark infringement is counterfeiting.").

A defendant is liable for unfair competition under the Lanham Act if the defendant:

> on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A); *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). Falsely designating the origin of a product is one way a defendant can engage in unfair competition under § 1125(a)(1)(A). *See Phoenix Entm't*, 829 F.3d at 822 (section 1125(a) "creates a remedy against a person who engages in unfair competition by, *inter alia*, falsely

designating the origin of a product"). For simplicity, the Court hereafter refers to Plaintiffs' federal trademark and counterfeiting claim as their trademark claim and Plaintiffs' federal false designation of origin and unfair competition claim as their unfair competition claim.

Defendants make two arguments in support of their motion to dismiss. First, they argue that Plaintiffs' complaint fails to plausibly allege likelihood of confusion. Second, they argue that Plaintiffs have not sufficiently alleged a counterfeiting claim because they have not offered any specific facts indicating that Defendants intentionally sold the Infringing Goods knowing that their marks were counterfeits. The Court addresses each argument in turn.

**I.       Likelihood of Confusion**

To prevail on either their trademark claim or their unfair competition claim, Plaintiffs must demonstrate that Defendants' use of a protectable mark "is likely to cause confusion among consumers." *Phoenix Entm't*, 829 F.3d at 822; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001). Plaintiffs need not prove likelihood of confusion at this stage of the litigation, but they still must plead allegations that make it plausible that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) ("[T]his Court's role at the motion to dismiss stage 'is limited to assessing whether [Plaintiffs have] pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of [their] claim." (alterations in original) (citation omitted)). Thus, in considering the plausibility of Plaintiffs' trademark and unfair competition claims, the Court employs the Seventh Circuit's seven-factor test for determining likelihood of confusion. *E.g.*, *Fortres Grand*, 763 F.3d at 701–

02; *Mighty Deer Lick, Inc. v. Morton Salt, Inc.*, No. 17-cv-05875, 2020 WL 635904, at *6–7 (N.D. Ill. Feb. 11, 2020) (using the likelihood of confusion factors to address the defendant's argument on a motion to dismiss that the plaintiff did not allege likelihood of confusion); *Mon Aimee Chocolat, Inc. v. Tushiya LLC*, No. 15 C 4235, 2015 WL 6407758, at *5–6 (N.D. Ill. Oct. 22, 2015) (same); *Top Tobacco*, 101 F. Supp. 3d at 789–92 (same); *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013, 1015–18 (N.D. Ill. 2014) (same).

The Seventh Circuit "uses the following seven factors to determine [] likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented," but the Seventh Circuit has recognized that the marks' similarity, the defendant's intent, and actual confusion "are especially important[.]" *Id.*; *Packman*, 267 F.3d at 643. With these factors in mind, the Court now turns to Plaintiffs' complaint.

*Factor 1:* With respect to the marks' similarity, the test is "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Sorensen*, 792 F.3d at 726 (citation omitted). Plaintiffs' complaint includes images of the RooR Marks and the Infringing Mark, as it was found on the water pipe Defendants allegedly offered for sale in December 2016. Below is one of the RooR Marks and the Infringing Mark:

| **RooR Mark** | **Infringing Mark** |
|---|---|
|  |  |

Doc. 1-2 at 1; Doc. 1-5 at 1. A jury viewing these marks could plausibly find that the marks are similar and likely to make a consumer associate the product offered for sale by Defendants with the source of the RooR Marks. What is more, Defendants concede that this factor "weigh[s] in favor of Plaintiffs." Doc. 22 at 13.

*Factor 2:* For similarity between products, "courts ask 'whether the products are the kind the public attributes to a single source.'" *KJ Korea*, 66 F. Supp. 3d at 1015 (citation omitted). The complaint alleges that Sream manufactures, advertises, and sells RooR-branded water pipes, which are the same type of products that Defendants allegedly offer for sale. This plausibly gives rise to the inference that the public would attribute the products to a single source. *See Mon Aimee Chocolat*, 2015 WL 6407758, at *5 (finding that the plaintiff sufficiently alleged the existence of the second factor "by claiming that both parties sell chocolate and confectionary products"); *KJ Korea*, 66 F. Supp. 3d at 1015–16 (finding that the complaint addressed the second factor by alleging that the plaintiffs and defendants both produced "nutritional supplements, massage apparatuses, and health food products in association with their respective marks"); *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03 C 5506, 2005 WL 8177551, at *4 (N.D. Ill. Oct. 27, 2005) (finding the second factor satisfied "because the counterfeit products are the exact same type of goods as Plaintiffs['] genuine cigarettes").

*Factor 3:* With respect to the area and manner of concurrent use, the Court asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). To answer this question, the

9

Court considers the "relative geographical distribution areas, evidence of direct competition between the products, whether products are sold to consumers in the same type of store or similar section of a particular store, and whether the product is sold through the same marketing channels." *Top Tobacco*, 101 F. Supp. 3d at 790. Plaintiffs allege that Sream sells RooR-branded products to distributors that include retail stores specializing in smoker's products. STOP 30 is likewise a retail store, and the Court can reasonably infer that it specializes in smoker's products as well, as shown by the photographs attached to Plaintiffs' complaint, including the one showing the store's signage: "CIGARETTES & CIGARS Plus." Doc. 1-5 at 2–4. Plaintiffs also allege that Defendants' offers to sell the Infringing Goods have caused Plaintiffs to lose sales, which indicates that the genuine RooR-branded products and the Infringing Goods compete. And geographically, both STOP 30 and Sream's distributors sell their smoking products in the same state, Illinois. To be sure, Illinois is a large geographic area, and Plaintiffs would have had a stronger case regarding the "geographical distribution area" consideration had they pleaded that Sream had distributors in Joliet, Illinois or the Chicagoland area.[4] But this is just one factor to consider. Overall, Plaintiffs' allegations raise the possibility that "there is a relationship in use, promotion, distribution, or sales between" the parties' goods, *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted), "above a speculative level," *Horist*, 941 F.3d at 278 (citation omitted).

   *Factor 4:* Plaintiffs do not argue that their complaint addresses this factor, which looks at the degree of care likely to be exercised by customers. Thus, the Court finds that this factor does not support a likelihood of confusion finding.

---

[4] Crest Hill, where STOP 30 is allegedly located, is a few miles outside of Joliet, and roughly 40 miles southwest of Chicago.

*Factor 5:* For the strength of the plaintiff's mark, "courts examine 'the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source.'" *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). "A mark's strength ordinarily corresponds to its economic and marketing strength." *Sorensen*, 792 F.3d at 731. Plaintiffs allege that Sream has been continuously using the RooR Marks in commerce throughout the United States for several years (since 2013) and that sales of RooR-branded products in the United States have exceeded $4 million for the last three years. Moreover, Plaintiffs allege that "[t]he RooR Marks are distinctive to both the consuming public" and those in Plaintiffs' industry, that RooR is "a recognizable high quality brand," and that "[t]he superiority of RooR branded products is . . . readily apparent to consumers . . . [and] to industry professionals as well." Doc. 1 ¶ 18. According to Plaintiffs, they have "spent substantial time, money, and effort in developing consumer recognition and awareness of the RooR brand via point of purchase materials and displays, through their websites, by attending industry trade shows, and through social media promotion." *Id.* ¶ 19. These allegations, which indicate continuous (and economically successful) use of the RooR Marks for several years, distinctiveness based on quality and reputation, and substantial efforts to maintain recognition and awareness of the brand through advertising and promotion, plausibly give rise to the inference that the fifth factor weighs in favor of likelihood of confusion. *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000) (finding that the plaintiff's use of its mark for six years and its good reputation warranted weighing the fifth factor in favor of a likelihood of confusion); *Mighty Deer Lick*, 2020 WL 635904, at *7 (allegation that the plaintiff's mark was "widely recognized as being associated with [the plaintiff] and high-quality

11

goods" satisfied the fifth factor).  Moreover, as with the first factor, Defendants concede that this factor "weigh[s] in favor of Plaintiffs."  Doc. 22 at 13.

*Factor 6:* Plaintiffs concede that they have not pleaded any facts from which the Court can reasonably infer actual confusion.  Nonetheless, "the absence of factual allegations demonstrating actual confusion is not dispositive," *KJ Korea*, 66 F. Supp. 3d at 1016, because "evidence of actual confusion . . . is not required to prove that a likelihood of confusion exists," *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

*Factor 7:* This factor primarily looks to whether "the defendants are attempting to 'pass off' their products as having come from the plaintiff."  *Packman*, 267 F.3d at 644.  Regarding this factor, Plaintiffs' opposition cites to paragraphs 34 and 35 of the complaint, where they allege that Shamsi knowingly and intentionally adopted and used the Infringing Mark and that both Defendants acted with the "intent to trade on the goodwill of the RooR Marks, cause confusion and deception in the marketplace, and divert potential sales of authentic ROOR water pipes" to themselves.  Doc. 1 ¶¶ 34–35.  These allegations address Defendants' intent, but they "do not weigh particularly heavily in favor of or against likelihood of confusion" because they are conclusory and not supported by factual allegations from which the Court can reasonably infer the alleged intent and knowledge.  *See Top Tobacco*, 101 F. Supp. 3d at 791 (addressing unsupported allegations that the defendant was intentionally using its mark "to profit off of the goodwill and consumer recognition of" the plaintiff's trademark and "deliberately and willfully used [its] mark . . . to pass its tobacco product off as those of" the plaintiff (citations omitted)).

In sum, Plaintiffs have alleged sufficient facts pertaining to four of the seven likelihood of confusion factors: the first, second, third, and fifth factors.  By doing so, Plaintiffs have raised the possibility of likelihood of confusion "above a speculative level," *Horist*, 941 F.3d at 278

12

(citation omitted), especially given the fact-intensive nature of weighing the different factors depending on the facts of the case, *see Packman*, 267 F.3d at 643; *Top Tobacco*, 101 F. Supp. 3d at 790.  Courts from this District have similarly found that complaints that plead sufficient facts pertaining to four of the seven factors adequately allege likelihood of confusion.  *See, e.g.*, *Mon Aimee Chocolat*, 2015 WL 6407758, at *5–6 (finding likelihood of confusion adequately pleaded where the complaint alleged sufficient facts pertaining to the first, second, third, and fifth factors); *Top Tobacco*, 101 F. Supp. 3d at 789, 792 (same); *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 715–17 (N.D. Ill. 2014) (finding likelihood of confusion adequately pleaded where the complaint alleged sufficient facts pertaining to the first, second, fourth, and fifth factors).  The Court therefore denies Defendants' motion to dismiss based on their likelihood of confusion argument.

## II.     Knowledge that the Infringing Mark is a Counterfeit

Defendants also argue that Plaintiffs have not adequately pleaded a counterfeiting claim because they have not offered any specific facts indicating that Defendants sold the Infringing Products knowing their marks were counterfeits.  Defendants cite several cases for this argument, but the only case that supports Defendants' proposed knowledge requirement is *Ford Motor Co. v. Heritage Management Group, Inc.*, which states that a plaintiff alleging trademark counterfeiting "must show that 'the defendant intentionally used the mark knowing it was a counterfeit.'"  911 F. Supp. 2d 616, 621 (E.D. Tenn. 2012) (citation omitted).

The Court does not find *Ford Motor* persuasive.  The intentionality and knowledge requirement set forth in *Ford Motor* appears to have originated in *Babbit Electronics, Inc. v.*

*Dynascan Corp.*,[5] where the Eleventh Circuit, quoting 15 U.S.C. § 1117(b), stated that a trademark holder alleging counterfeiting had to prove that the infringer "'intentionally used a mark, knowing such mark is a counterfeit mark.'" 38 F.3d 1161, 1181 (11th Cir. 1994). But § 1117(b) does not address what is required to prove a counterfeiting claim, as *Babbit* reasoned. Rather, § 1117(b) sets forth what is necessary for a court to treble damages and award attorneys' fees once a counterfeiting violation has *already been established*:

> In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title . . . in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall . . . enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of [] intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services[.]

15 U.S.C. § 1117(b)(1). In other words, while § 1117(b)'s intent and knowledge requirements are relevant in determining how to remedy a counterfeiting violation, they have nothing to do with what is necessary to establish a counterfeiting violation in the first place.

Indeed, as the Seventh Circuit has recognized, "[s]ellers bear *strict liability* for violations of the Lanham Act." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n.6 (7th Cir. 1992) (emphasis added). And nothing in § 1114(1)(a) otherwise suggests that intent or knowledge is an element of a counterfeiting claim. *Lorillard Tobacco*, 2005 WL 8177551, at *3 n.2 (noting that § 1114(1)(a) "makes no mention of intention"); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F. Supp. 2d 882, 885 n.3 (N.D. Ill. 2005) (same). To the contrary, an award of statutory damages—which Plaintiffs seek—"does not

---

[5] For the proposition at issue, *Ford Motor* quoted *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F. Supp. 2d 952, 957–58 (S.D. Ohio 2005), which cited *Too, Inc. v. TJX Companies, Inc.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002), which cited *Babbit*.

depend on whether or not there is a showing of intentional counterfeiting," and a plaintiff is entitled to recover statutory damages even for "innocent" counterfeiting. 15 U.S.C. § 1117(c); *Lorillard*, 2005 WL 8177551, at *5; *see also Lorillard*, 360 F. Supp. 2d at 887 (whether individuals "had any idea that the actual cigarettes at issue were not authentic" concerned "damages and remedies, not liability"). As such, the Court denies Defendants' motion to dismiss based on their knowledge and intent argument.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss [22].

Dated: October 6, 2020

_____
SARA L. ELLIS
United States District Judge